IN RE ESTATE OF MATT FOUSEK.

FRANK FOUSEK et al., Appellees, v. MARY PLOWER et al.,
Appellants.

**WILLS:** Mental Competency—Inequitableness. Apparent inequita-
bleness in a will may wholly disappear when due consideration
is given to the history of the family: (1) The relative amount
which each child has contributed in labor or otherwise to tes-
tator's property; (2) the amount of advancements to preter-
mitted children; (3) and the relative financial condition of
each child.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

DECEMBER 16, 1919.

REHEARING DENIED MARCH 15, 1920.

THIS is a will contest. The testator was Matt Fousek.
He left surviving him a widow and ten children. The chil-
dren were seven sons and three daughters. The seven sons
are the proponents of the will. Two of the daughters ap-
peared as contestants. The grounds of the contest were
undue influence and mental incompetency. At the close
of all the evidence, the trial court dismissed the contest,
and directed a verdict for the proponents. The contest-
ants appealed.—*Affirmed.*

*Voris & Haas,* for appellants.

*Remley & Remley* and *F. L. Anderson,* for appellees.

EVANS, J.—The argument for appellants in this court
is directed to the charge that the testator was mentally in-

competent. It is not claimed that there was any evidence of undue influence. The testator was past 91 years of age when he made the will. He lived nearly 3 years thereafter. At the time of making the will, his property consisted of a farm of 160 acres. In addition thereto, he had, at the time of his death, about $1,100 in money. His entire estate was worth approximately $20,000. The will gave the widow, then about 70 years of age, the life use of all the property. It contained bequests to the daughters of $500 each, to be paid after the death of the widow, out of the proceeds of the sale of the farm. The bequests to the sons gave to each of them one seventh of the remainder of the proceeds of the sale of such farm. The money on hand was not disposed of by the will. The testator was a Bohemian by birth. He came to this country at 30 years of age. At 40, he entered the Union army, in the War of the Rebellion. He lived the greater part of his life in the community where he died. He acquired his property by slow process and by great industry. His farm was of poor quality. He was a man of good habits and good character. He had remarkable health. He had never been sick until his last illness, which lasted only a few days. In the last years of his life, his faculties had failed, to a greater or less degree, and this included the faculty of memory. He transacted his own business to the end of his life. It does not appear that he ever made any mistake in business transactions. His business was not extensive, but, such as it was, it needed intelligent attention.

The question presented to us is whether there was sufficient evidence of mental incompetency introduced on behalf of the contestants to require the submission of the case to the jury. To put it in another way, if the submission of the case to a jury had resulted in a verdict adverse to the will, could we have sustained such verdict upon this record?

The general nature of the evidence on behalf of the contestants was to the effect that the testator was feeble, physically and mentally, in that he was forgetful, and frequently failed to recognize people whom he ought to know. The record is presented here in an abstract by the appellants, and in a very extensive denial and amendment of abstract by the appellees. The appellants are at a disadvantage here, because they have built their argument solely upon their own abstract, and largely upon those portions thereof which are eliminated by the amended abstract of the appellees. We have, notwithstanding, gone through the record with a care demanded by the importance of the case. The great age of the testator at the time of making the will is a circumstance not to be ignored, on the one hand, nor, on the other hand, is it to be deemed as casting any burden of proof upon the proponents.

It is contended for appellants that the will was unnatural, in that it was inequitable to the children, toward all of whom the testator had equal affection. If true, this circumstance also has appropriate significance. But the unnaturalness or want of equity of the will is not to be deemed as self-evident on the face thereof, as a matter of mathematics. On this question, the history of the family is to be considered, and the moral equities and obligations appearing therefrom. Speaking broadly, it appears that the sons, and each of them, had contributed more valuable services in the acquisition of the property than had the daughters. Each of the daughters, at the time of her marriage, had received, as a settlement from the father, the sum of $300, and other personal property of a value of $100. As compared with his means at the time, these were liberal settlements. These payments had been made to the daughters 19 years, 25 years, and 27 years, respectively, prior to the death of the testator. At the time these settlements were made, the testator's farm consisted of only 80 acres.

All of the sons remained at home after their majority, and worked without compensation for a period of years. Some of them remained as long as 6 or 7 years. In 1901, when the testator was 78 years of age, another 80-acre tract was bought, largely on credit, and was later paid for, but by the aid of the labor of the younger sons. It is true that each son, at the time of his marriage, received aid from the father in the form of property. They received, however, no money, and their claim is that the property received by them was only the equivalent of the property received by the daughters, in addition to the cash payment of $300.

As bearing on this question, the circumstances of the members of the family are a proper consideration. These are touched upon rather meagerly in the record. For aught that appears, the daughters may have been in prosperous circumstances, and living upon farms owned by their husbands, as claimed by counsel for appellee, and the sons landless. Discrimination in such a case by a parent is not indicative of want of equal affection, nor want of testamentary capacity.

The circumstances attending the making of the will are significant. They disclose a thoughtful attempt on the part of the testator to deal fairly with all his children. It is an interesting fact that a computation of interest at 6 per cent per annum, from the period of time since the oldest daughter received her $300, plus $500, puts her on a substantial equality with the shares bequeathed to each son.

We are clear that a jury would not be warranted in finding that the will in question was inequitable or unnatural, within the meaning of the law. The other evidence of mental incompetency is of a very unsatisfactory character, and should be characterized, we think, as mere scintilla.

We reach the conclusion that, upon this record, a jury would not have been warranted in finding a verdict adverse

to the mental competency of the testator. The verdict was, therefore, properly directed, and the order of the court is—
*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.